UNITED STATES

v.

Clay H. BERRI, Machinery Technician
Second Class, U.S. Coast Guard.

CGCM 0021.
Docket No. 921.

U.S. Coast Guard Court of
Military Review.

11 June 1990.

Trial Counsel: LCDR Lawrence I. Kiern, USCGR

Individual Military Defense Counsel: CAPT David B. Wiles, JAGC, USA

Appellate Government Counsel: LCDR Michael J. Devine, USCG

Appellate Defense Counsel: LCDR James Collin, USCG

Before Panel Two, BAUM, BARRY and GRACE, Appellate Military Judges.

BAUM, Chief Judge:

Appellant, after pleading not guilty to all charges and specifications, was convicted by a general court-martial composed of officer members of one specification of attempted murder, one specification of maiming, and one specification of assault with intent to inflict grievous bodily harm in violation of Articles 80, 124 and 128 of the Uniform Code of Military Justice, 10 U.S.C. §§ 880, 924, 928. He was sentenced to a dishonorable discharge, confinement for seventeen years, forfeiture of all pay and allowances and reduction to E–1, which was approved by the convening authority.

The evidence reveals that appellant, after exchanging angry verbal taunts with a shipmate early one morning aboard ship, confronted that shipmate later in the evening in the parking lot of a motel where the victim and other crewmembers were quartered. The appellant was armed with a twelve gauge shotgun. When the shipmate attempted to flee, appellant fired the shotgun hitting him in the right arm and side, knocking the victim to the ground, whereupon appellant shot him again at point blank range. As a result, the victim suffered serious internal injuries, amputation of the right arm above the elbow, and required two major operations with long term care and limited recovery.

These facts were essentially uncontested, since appellant relied primarily on the affirmative defense of lack of mental responsibility, calling expert witnesses whose testimony supported that thesis. In addition to the lack of mental responsibility defense, appellant also contended the evidence negated the specific intent elements required for all the charged offenses. The judge, however, refused to instruct and to allow argument on this issue of specific intent. These denials by the judge have been asserted as error, along with five other assignments. The six errors assigned by appellant are as follows:

I

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY REFUSING TO ALLOW INTO EVIDENCE ON SENTENCING A PSYCHIATRIC REPORT SHOWING APPELLANT'S MENTAL CONDITION AS A MITIGATING FACTOR

II

THE CONVENING AUTHORITY ABUSED HIS DISCRETION IN DENYING APPELLANT THE OPPORTUNITY TO RETAIN HIS DETAILED DEFENSE COUNSEL AFTER AN ATTORNEY CLIENT RELATIONSHIP HAD BEEN ESTABLISHED

III

THE MILITARY JUDGE ERRED IN HIS REFUSAL TO ALLOW APPELLANT'S COUNSEL TO ARGUE THAT APPELLANT DID NOT HAVE MENTAL CAPACITY TO FORM SPECIFIC INTENT AND HIS REFUSAL TO INSTRUCT THE MEMBERS AS TO MENTAL DEFECTS AND THEIR IMPACT ON THE SPECIFIC INTENT ELEMENT OF THE CRIMES CHARGED

## IV

THE MILITARY JUDGE ABANDONED HIS IMPARTIAL ROLE AND FORCED APPELLANT INTO A STIPULATION THAT ADMITTED ONE OF THE ESSENTIAL ELEMENTS OF THE CHARGE OF INTENTIONAL INFLICTION OF GRIEVOUS BODILY HARM THAT WAS NOT VOLUNTARILY CONSENTED TO

## V

APPELLANT SUFFERED PREJUDICE DUE TO AN INORDINATE DELAY OF 269 DAYS IN THE POST TRIAL REVIEW PROCESS

## VI

THE STAFF JUDGE ADVOCATE'S FAILURE TO RESPOND ADEQUATELY TO DEFENSE COUNSEL'S R.C.M. 1105/1106 SUBMISSION DEPRIVED THE CONVENING AUTHORITY OF AN INFORMED DECISION ON APPELLANT'S SENTENCE

After full consideration of the briefs submitted by both sides, as well as oral arguments, we have concluded that the judge erred as asserted in Assignment III and, as a result, only a finding of guilty of the lesser included offense which does not contain a specific intent element may be affirmed. The findings of guilty of offenses requiring specific intent must be set aside and a rehearing may be ordered with respect to those offenses. If such a rehearing is deemed impracticable, then a rehearing on the sentence may be ordered or the sentence may be reassessed by the convening authority in light of the affirmed reduced finding. In view of this action, one of the other assignments with its requested remedy is mooted and need not be addressed. Two others are summarily rejected and two, Assignments I and II, will be briefly addressed. Assignment III requires full explication.

### Assignment of Error III

[1] Appellant contends that the judge erred in refusing to instruct the court members with regard to the impact on the element of specific intent of the evidence of appellant's mental condition. The judge's refusal to allow defense counsel to argue on this subject is also advanced as error. These asserted errors were spawned by legislation in 1986 changing the defense of lack of mental responsibility. A new Uniform Code of Military Justice provision, Article 50a, 10 U.S.C. § 850a, made lack of mental responsibility an affirmative defense and defined it as follows: "at the time of the commission of the acts constituting the offense, the accused, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of the acts. Mental disease or defect does not otherwise constitute a defense."

Rule for Courts–Martial 916(k)(2) was modified thereafter to provide that: "A mental condition not amounting to a lack of mental responsibility under subsection (k)(1) of this rule is not a defense, *nor is evidence of such a mental condition admissible as to whether the accused entertained a state of mind necessary to be proven as an element of the offense.*" [Emphasis added.] These provisions, particularly RCM 916(k)(2), appear to preclude evidence of the accused's mental condition on the issue of specific intent.

The Court of Military Appeals addressed this matter directly in *Ellis v. Jacob*, 26 M.J. 90 (CMA 1988). After analyzing the legislation which established the new law with respect to mental responsibility, along with the relevant Manual for Courts–Martial provision, the Court said, "[t]hus Article 50a(a), like its model, [in the Federal Criminal Code] does not bar appellant from presenting evidence in support of his claim that he lacked specific intent to kill at the time of his offense. Derivatively, R.C.M. 916(k)(2) is also ineffective in achieving this result." *Id* at 93. The case presently before us was tried before the decision in *Ellis v. Jacob, supra,* so the military judge here was required to answer all questions concerning this matter without the benefit of *Ellis v. Jacob*'s guidance. Despite that

disadvantage, the military judge made a correct initial ruling.

The judge granted a defense motion at the outset of trial for permission to introduce evidence of the accused's mental condition on the issue of specific intent. Appellate Exhibit XXXIII. In granting, he said, "I do not see how a court can constitutionally prohibit the defense from offering evidence of any sort on specific intent." Record of Trial at 154. Subsequently, however, he appeared to have a change of heart when it came time to instruct the court.

Extensive psychiatric testimony was presented by the defense to the effect that the accused was suffering from post Vietnam stress syndrome, a severe mental disease or defect, which, according to the defense witnesses, rendered the accused unable to appreciate the nature and quality or the wrongfulness of his acts because of a stress syndrome induced dissociative state. In addition to instructions on lack of mental responsibility, the defense requested the judge to instruct on the effect of this evidence on the element of specific intent. The judge, in acting on this request, said that upon rereading a leading federal case several times, *U.S. v. Pohlot*, 827 F.2d 889 (3rd Cir.1987), he had come to the conclusion that the testimony of the doctors "does not go directly to the issue of specific intent". Record of Trial at 776. He, therefore, refused to instruct the court on the impact of the mental disease or defect evidence on the requisite specific intent element of each offense. In this regard, we believe the judge erred because we find that the evidence in question went directly to the issue of specific intent. An appropriate instruction was required.

The importance of such an instruction is underscored by the change in the law making lack of mental responsibility an affirmative defense. As a result of that change, the judge instructed the court members that they were not to consider the evidence pertaining to mental responsibility until *after* they had found the accused guilty beyond a reasonable doubt of every element of each offense. Record of Trial at 825.

At that point, they could then consider the relevant evidence as an affirmative defense to be established clearly and convincingly by the accused. Before the court members reached that stage, however, it was necessary for them to decide whether the accused had three requisite specific intents: intent to kill, intent to inflict grievous bodily harm, or intent to simply inflict harm. The psychiatric evidence presented had a direct bearing on each of these intents, but the members were not instructed that they could consider it for this purpose. The members were told, instead, that they could consider it only after they had first found the accused guilty of the requisite intents. We are convinced that such an instruction, without the necessary guidance on utilizing that same evidence for the deliberations on specific intent, materially prejudiced the accused. The refusal to allow the defense to argue this issue to the court members was also prejudicial error.

The prejudicial effect from these errors is manifested by the differences in burdens and standards of proof at the two stages of court deliberation. As stated by the judge, the accused had the burden of establishing lack of mental responsibility by clear and convincing evidence as an affirmative defense after findings of guilt were registered. There was no such burden on the defense, however, when it came to determining specific intent during initial deliberations on guilt. The burden was on the government to prove that element beyond a reasonable doubt. Accordingly, the defense, in order to succeed at that stage of deliberations, had only to raise a doubt in the minds of the members as to that element, with no particular quantum of evidence required to do so. There was no burden whatsoever on the defense at that stage. The weight of convincing the court at that point lay solely on the government and the court was not told it could consider the evidence of mental condition in determining whether the government had satisfied that burden nor was the defense allowed to argue the issue. The prejudicial effect from these omissions is apparent and precludes our affirming any specific intent offenses.

The government says that the accused's failure to object to the omissions or to the instructions as given constituted waiver. We disagree. Appellant requested an instruction on this matter and the judge refused. This put everyone on notice of what was required. We do not believe it was necessary for defense counsel to record his objection to the judge's adverse ruling on the requested instruction in order to preserve the issue. In any event, we believe the judge's failure to instruct on specific intent, as requested, also amounted to plain error, which we will take note of pursuant to Military Rule of Evidence (MRE) 103(d).

### Assignment of Error I

In Assignment of Error I, appellant asserts that the military judge erred in refusing to allow into evidence at the sentencing stage of trial a written psychiatric report from one of the expert witnesses who had testified on the merits. The judge denied admission of the document because he deemed it inadmissible on the merits and, since the Court members could reconsider their previous decision on mental responsibility, he determined that he would not relax the rules of evidence to permit consideration of this document. We believe the judge did not abuse his discretion in so ruling, particularly since that doctor had previously testified and the judge instructed the court that earlier testimony before the findings, including appellant's mental condition, could be considered in arriving at an appropriate sentence. Accordingly, Assignment of Error I is rejected.

### Assignment of Error II

In Assignment II, appellant asserts that the convening authority abused his discretion in denying appellant the opportunity to retain his detailed defense counsel with whom an attorney/client relationship had been established. As background, the accused had specifically requested Captain David B. Wiles of the Army Judge Advocate General's Corps as defense counsel. At that time, the accused was being represented by detailed defense counsel, LT Re-ginald Sealey, USCG. Upon Captain Wiles' being made available, the accused requested that the convening authority permit the retention of LT Sealey as associate counsel. The convening authority denied this request; appellant challenged that denial at trial, to no avail, and now asserts error.

At one time, an accused had an absolute right to the retention of detailed defense counsel, even when an individual military counsel was made available upon request. All of that was changed in 1981 by amendment to Article 38(b), UCMJ, 10 U.S.C. § 838(b), which limited an accused to one military counsel, unless the person authorized to detail counsel determined to provide additional counsel. Article 38(b)(6)(B) expressly authorizes the detailing officer, the convening authority in this case, *in his sole discretion*, to approve a request for retention of detailed counsel when the accused is represented by military counsel of his own selection. Appellant, citing *U.S. v. Jerasi*, 23 M.J. 162 (CMA 1986), asserts that, despite the detailing officer's *sole discretion* authority, the decision to disapprove such a request is reviewable for abuse of discretion and we agree.

Here, the convening authority, in denying the request, did not articulate his reasons for disapproval; he simply said the accused did not have a right to such counsel. Without further rationalization of that action, we are unable to say the convening authority did not abuse his discretion in this particular case.

On the face of the request, there were factors which would support allowing LT Sealey to remain as counsel. The offenses were particularly serious and the individual military counsel was not a Coast Guard law specialist familiar with Coast Guard practices. While there may have been countervailing reasons for denying the request, they were not articulated. Under the circumstances, we believe the convening authority should have set forth his reasons. Without them, we will treat his denial as error. At most, however, that denial would amount to non-prejudicial er-

ror. Appellant has not asserted how he was harmed by the refusal to allow LT Sealey to remain on the defense team and we are unable to discern any detriment. Moreover, no constitutional right was impacted by the convening authority's action. The accused's right to counsel was fully satisfied by Captain Wiles' professionally competent representation. Accordingly, Assignment of Error II is rejected. Convening authorities, however, would be well advised to set out their reasons whenever denying a request for retention of detailed counsel in order that those reasons may properly be reviewed on appeal.

*Assignments of Errors IV, V and VI*

Assignments of Error IV and V are deemed to be without merit and are rejected. Assignment of Error VI, which pertains to the convening authority's action on the sentence, is mooted by our action in this case.

### Conclusion

In light of the prejudicial errors we have found with respect to specific intent, the findings of guilty for the offenses containing a specific intent element cannot be affirmed. There is a lesser included offense of assault with a dangerous weapon, a loaded shotgun, which may be affirmed, because a specific intent is not required for commission of that offense. Other than the errors relating to specific intent, we deem the proceedings with respect to findings to be correct in law and fact. Accordingly, the lesser included offense of assault with a dangerous weapon, a loaded shotgun, in violation of Article 128, UCMJ is affirmed. The remaining findings of guilty are set aside and a rehearing is authorized with respect to those offenses and the sentence. If a rehearing on findings is deemed impracticable, the convening authority may order a rehearing on sentence, alone, to determine an appropriate sentence for the affirmed finding of guilty of assault with a dangerous weapon, or he may reassess the sentence in light of the af-

firmed finding of guilty and approve an appropriate lesser punishment.

Judge Grace concurs.

BARRY, Judge (concurring in part and dissenting in part).

I concur with Chief Judge Baum that the military judge erred in not allowing evidence of the appellant's mental condition to be considered by the members as bearing on the elements of the offenses involving specific intent. I concur in the finding as to the lesser offense, but, although it is legally appropriate, I do not concur in the final disposition because there is a more appropriate resolution available.

It is very clear from the record that appellant was a man with serious mental problems. His bizarre background includes a knife attack in which he seriously wounded a man in 1979. For this attack, which he could not recall, appellant received only minor punishment and no psychiatric or medical treatment. He had a history of ever more frequent episodes of anger and rage, for which he would often have no subsequent memory. His problems increased over many months prior to the shotgun assault from which these charges emanate. There is no remaining issue as to whether the evidence of mental impairment amounts to a defense—it does not. However, there is a substantial issue raised whether the accused formed the specific intent—or was even able to form the specific intent—set forth in the charged offenses.

One must wonder about the effect of requiring all the parties to retry the case and to again recall and recount the details of this tragedy. I see no benefit to the parties, and no substantial gain either to the government or the appellant by a rehearing. Indeed, the multiple costs of such a rehearing seem enormous with little likelihood of achieving a result substantially more favorable to the government than that which can be achieved by the action I would propose. Nor, it seems, does our duty require that we authorize a rehearing of the case. In every controversy, including those in the criminal sphere, there

comes a point where the matter should be finally resolved, even though further litigation is legally available. Both as a matter of judicial economy, and as a matter of reaching a result consistent with justice, I believe we have reached that point in this case. We can resolve the issues and close the case by simply affirming the finding not containing a specific intent element (as does the majority), and reassessing the sentence. Such a resolution is within the purview of this Court. *U.S. v. Roa,* 12 M.J. 210, 213 (CMA 1982). I deem such action appropriate in this case. *See generally, U.S. v. Sales,* 22 M.J. 305 (CMA 1986).

I concur in affirming a single finding of guilty of assault with a dangerous weapon, a loaded shotgun. I would reassess the sentence to an appropriate level that is not greater than I am convinced would have been awarded by the court under proper instructions for the approved offense.